IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | CR. No.: 6:06-269-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Tito L. Knox, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a request by the Bureau of Prisons ("BOP") to involuntarily medicate Tito L. Knox ("Knox") with psychotropic medications. For the reasons set forth below, the court grants the BOP's request.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On March 14, 2006, Knox was charged with one count of being a felon in possession of a firearm. In an emergency order dated March 21, 2006, Magistrate Judge William M. Catoe ordered that Knox be sent for a psychiatric evaluation to determine

1. Whether or not, at the time of the criminal conduct alleged . . . , the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts; and
2. Whether or not the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(March 21, 2006, Order 2.). In a report dated June 29, 2006, the BOP reported that Knox was not competent and recommended that Knox be placed "in a secure psychiatric facility for restoration of competency." (June 29, 2006, Report 10.) Further, the report indicated that Knox's sanity at the time of the offense "cannot be addressed until such time as the question of

1

competency is clarified" because "so long as the defendant is believed to be inappropriate for continuation of criminal proceeding, the question of insanity cannot be ethically considered." (Id. 11.)  On July 13, 2006, Magistrate Judge Bruce H. Hendricks ordered that Knox be committed to the custody of the Attorney General for hospitalization not to exceed four months to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the case to proceed."  (July 13, 2006, Order 2.)

Knox was sent to the Federal Medical Center at Butner, North Carolina ("Butner") for a competency restoration study.  In a report dated September 14, 2006 ("Report"), Dr. Ralph Newman ("Dr. Newman") and Edward E. Landis, Ph.D. ("Dr. Landis") (collectively "reviewers") opine that Knox is currently not competent due to paranoid schizophrenia and that he requires treatment with psychotropic medication.  However, Knox is incapable of consenting to such treatment.  Hence, the reviewers recommend that the court order that Knox be involuntarily medicated with psychotropic medications.  The court held a hearing on November 6, 2006, to consider the BOP's request.  Dr. Newman testified at the hearing for the Government.  Knox did not present any witnesses.

## II. Discussion of the Law

### A. Competency

The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960).  This determination is "left to the sound discretion of the district court, with the advice of psychiatrists."  United States v. Rodman, No. 06-170, 2006

2

WL 2390348, at *3 (D.S.C. Aug. 14, 2006). Based on Dr. Newman's testimony at the November 6, 2006, hearing and a review of his Report, the court finds that Knox is currently incompetent to proceed to trial because he suffers from schizophrenia, which impairs his ability to consult with his counsel.

### B. Request to Involuntarily Medicate Knox

Having found that Knox is not competent to proceed to trial, the court must consider the BOP's request to involuntarily medicate Knox. In Sell v. United States, the United States Supreme Court "clarified the legal standard for administering involuntary medication to render a defendant competent to stand trial." United States v. Evans, 404 F.3d 227, 233 (4th Cir. 2005). "In Sell, the Supreme Court held that the government's interest in bringing a mentally incompetent defendant to trial can outweigh the defendant's liberty interest in being free from unwanted medication, such that the Due Process Clause will allow the Government to medicate the defendant against his will." Id. at 235.

In order to involuntarily medicate Knox, the Government must make a four-part showing. The Government must show by clear and convincing evidence that

1. "*important* governmental interests are at stake";
2. "involuntary medication will *significantly further* those concomitant state interests";
3. "involuntary medication is *necessary* to further those interests"; and
4. "administration of the drugs is *medically appropriate*."

Sell, 539 U.S. 166, 180-81 (2003).

### 1. Important Governmental Interests

"An important governmental interest exists when the defendant is accused of a 'serious' crime and [s]pecial circumstances do not undermine the government's interest in trying him for

3

that crime." Evans, 404 F.3d at 235. Determining whether a crime is serious requires focusing "on the maximum statutory penalty authorized by statute." Id. at 237. The statutory maximum for a violation of 18 U.S.C. § 922(g)(1) depends on Knox's prior convictions. For a plain violation of § 922(g)(1), the statutory maximum is ten years. However, if Knox has three previous convictions for a violent felony or a serious drug offense, the minimum penalty is at least 15 years' imprisonment. § 924(e)(1). It is unclear whether Knox has three previous violent felony or serious drug convictions. However, at a minimum, Knox is subject to a maximum punishment of 10 years' imprisonment. It is "beyond dispute that the Government does have an important interest in trying a defendant charged with a felony carrying a maximum punishment of 10 years imprisonment." Evans, 404 F.3d at 238. Hence, Knox is accused of a serious crime.

The next issue is whether any special circumstances undermine the Government's interest in trying Knox. For example, "[t]he defendant's failure to take drugs voluntarily . . . may mean lengthy confinement in an institution for the mentally ill[, a fact] that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." Sell, 539 U.S. at 180. "The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed)." Id. Knox has been confined for approximately nine months and, given the potential length of any sentence Knox would receive, the Government's important interest in trying Knox is not undermined by this comparatively brief period of confinement. Further, it is unclear whether Knox would be a good candidate for civil commitment under 18 U.S.C. § 4246, which allows commitment after completion of sentence or dismissal of charges if

a person "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available." Knox has been housed in the general population at Butner, so it does not appear that his release would create a substantial risk of harm to a person or property. Therefore, the court finds that the first prong is satisfied.

### 2. Involuntary medication will significantly further concomitant state interests

In order to find that involuntary medication will significantly further concomitant state interests, the court must find that (1) "administration of the drugs is substantially likely to render the defendant competent to stand trial"; and (2) "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell, 539 U.S. at 181. In the Report, the reviewers indicate that there is an 80% chance that administration of antipsychotic medications will render Knox competent to proceed to trial. (Sept. 14, 2006, Report 12.)  Further, Knox has taken antipsychotic medications in the past with a good response. With respect to the side effects, the Report contains a detailed, individual treatment plan that outlines the potential side effects of the various drugs that may be used and concludes that "the proposed treatment would be substantially unlikely to have side effects that will interfere significantly with [Knox's] ability to assist counsel in conducting a defense." (Id. 8.) Further, Dr. Newman testified that any side effects can be managed medically. Therefore, the court finds that the second prong of the test is met as well.

### 3. Involuntary medication is necessary to further those interests

In satisfying the third part of the test, "[t]he court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Sell, 539 U.S. at 181. According to the Report, Knox's condition is "chronic and unlikely to improve . . . without treatment with antipsychotic medication." (Sept. 14, 2006, Report 8.) At the hearing on November 6, 2006, Dr. Newman reiterated his opinion that Knox's condition would not improve without treatment. Further, the primary treatment of schizophrenia involves use of antipsychotics. Therefore, the court finds that this prong is satisfied.

### 4. The administration of the drugs is medically appropriate

In determining whether the administration of drugs is medically appropriate, "[t]he specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." Sell, 539 U.S. at 181. As noted above, the use of antipsychotics to treat schizophrenia is standard treatment and in Knox's best interests. Further, the Report details an extensive treatment plan regarding the kinds of drugs that will be used and the potential side effects. (Sept. 14, 2006, Report 9-12.) Moreover, Dr. Newman testified that the side effects were minimal and could be managed medically. In addition, the risk of side effects is relatively low. Based on the foregoing, the court finds that the Government has satisfied the fourth prong.

It is therefore

**ORDERED** that the BOP's request to involuntarily medicate Knox is granted. It is further

**ORDERED** that Knox's treatment continue through the entire pretrial process including during transportation, holdover, trial, and sentencing, if necessary.

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              United States District Judge

Greenville, South Carolina
November 7, 2006